**SOUTHERN APPALACHIAN BIODIVERSITY PROJECT,**

v.

**UNITED STATES FISH AND WILDLIFE SERVICES, et al.**

**No. 2:00–CV–361.**

United States District Court, E.D. Tennessee, at Greeneville.

Nov. 8, 2001.

Joe W. McCaleb, Hendersonville, TN, Martin J. Bergoffen, Asheville, NC, for plaintiff.

Seth M. Barsky, Mauricia M. Baca, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for defendants.

## *MEMORANDUM OPINION*

INMAN, United States Magistrate Judge.

Plaintiff filed this action under the Endangered Species Act[1] to compel the defendants to designate "critical habitat" for sixteen species of endangered or threatened plants and animals found in Tennessee. Both the plaintiff and the defendants have moved for summary judgment.[2]

As pertinent to this suit, the Endangered Species Act requires the Secretary of the Interior, upon determining that a species of plant or animal is endangered or

---

1. 16 U.S.C. § 1531, *et seq.*

2. Docs. 11, 12.

threatened, to concurrently designate "critical habitat" for that species[3] *unless* the Secretary finds that designating critical habitat is "not prudent",[4] or unless critical habitat cannot then be determined. In the latter event, the Secretary may postpone for one year the identification or designation of the critical habitat.[5] The actual implementation of the Endangered Species Act, as relevant to this suit, has been delegated to the Fish and Wildlife Service.[6]

All sixteen species that are the subject of this suit long ago were determined by the Fish and Wildlife Service to be either endangered or threatened. However, no critical habitat was designated. With respect to seven of the subject species,[7] the Service determined that it would be not prudent to designate critical habitats. For the sake of convenience, those seven species will be collectively referred to as the "not prudent category." With respect to the remaining nine species,[8] which were listed as endangered or threatened on March 17, 1993, the Service concluded that the designation of critical habitats was prudent, but was not determinable at that time. However, the Service failed to designate a critical habitat within the one-year grace period allowed by 16 U.S.C. § 1533(b)(6)(C). Indeed, no critical habitat has been determined as of this date. These nine species hereafter will be collectively referred to as the "not determinable category."

For its part, plaintiff insists that it is entitled to summary relief with respect to each of its sixteen claims. With respect to the "not prudent" category of species, the Fish and Wildlife Service admits that it did not use the appropriate criteria when it determined that it would not be prudent to designate critical habitat for the seven species within that category. Basically, the Service acknowledges that it failed to balance any possible *benefits* against the drawbacks attendant to a designation of critical habitats. Although it essentially agrees that plaintiff's complaint is well-taken with respect to those seven species, it asks that it be allowed to take a "voluntary remand"[9] with respect to those seven species in order to give the Service an opportunity to utilize the correct criteria.

Regarding the remaining nine species, all of which are in the "not determinable" category, the Service strenuously resists plaintiff's Motion for Summary Judgment and, moreover, insists that it is *its* Motion for Summary Judgment which should be granted. Specifically, the Service maintains that plaintiff's suit regarding the nine species within the "not determinable" category is barred by the six-year statute of limitation of 28 U.S.C. § 2401(a).

■ The first issue which must be addressed is whether plaintiff's Motion for Summary Judgment with respect to the seven species within the "not prudent" cat-

---

**3.** 16 U.S.C. § 1533(a)(3).

**4.** A "not prudent" determination is indicated if identifying the area or habitat likely would result in increased predation by humans, thereby imperiling even more the existence of the species, or if the designation would be of no benefit. 50 C.F.R. § 424.12(a)(1)(i)–(ii).

**5.** 16 U.S.C. § 1533(b)(6)(C).

**6.** 50 C.F.R. § 402.01(b).

**7.** Braun's rockcress, Cumberlandian elktoe, Cumberlandian combshell, oyster mussel, purple bean, Eggert's sunflower, and rough rabbitsfoot,

**8.** Upland combshell, southern acornshell, coosa moccasinshell, southern clubshell, southern pigtoe, ovate clubshell, triangular kidneyshell, fine-lined pocketbook, and Alabama moccasinshell.

**9.** Doc. 18.

egory should be granted or, alternatively, whether the Service's Motion for a Voluntary Remand should be granted.

Stated crassly and starkly, it is money—more accurately, the lack of money—that has precipitated this suit and others like it. Congress has charged the Fish and Wildlife Service with the responsibility of identifying endangered or threatened species and the critical habitat for those species. To state the obvious, it requires money to fulfill this statutory duty. Unfortunately for all concerned, Congress has declined to curtail the scope of the Fish and Wildlife Service's duties under the Endangered Species Act, yet has refused to adequately fund the Service to enable it to carry out those duties. As a result, the designation of critical habitat is now driven almost exclusively by litigation. Of course, a court is concerned only with the issues and parties before it in any given suit. Upon finding that the Fish and Wildlife Service has not fulfilled its statutory duty to designate critical habitat, an injunction to do so is essentially the only alternative available to the court. As time has passed, the Service now finds itself confronted with a plethora of suits and injunctions; it must devote its limited resources to comply with judicial orders at the expense of curtailing or even abandoning its search for as-yet-unidentified endangered species. As injunction is heaped upon injunction, the Service's problems are compounded; to comply with the requirements of one court's injunction may require it to delay compliance with the orders of another court, and so it goes. Not only is the Service potentially put in the untenable position of heeding one court's order at the risk of violating the orders of another, it also confronts the specter of violating the Anti–Deficiency Act, 31 U.S.C. § 1304.

Should this Court grant defendants' Motion for a Voluntary Remand regarding the seven species within the "not prudent" category, it is conceivable, even probable, that the Fish and Wildlife Service will assign those species the lowest priority in terms of urgency regarding the designation of critical habitat. Certainly, the Service would not be confronted with any judicial deadlines with respect to those species.

Regarding the seven species for which the designation of a critical habitat was found to be not prudent, the defendants' Motion for Voluntary Remand [10] shall be DENIED, and plaintiff's Motion for Summary Judgment [11] shall be GRANTED IN PART; the question is the extent of the relief that should be granted, which will be discussed hereafter.

■ Turning now to the "not determinable" category, there can be no doubt that the Service is in violation of its statutorily-imposed duty to designate critical habitat within one year of its finding that the identification of a critical habitat was not determinable at that time. The nine species within this category were listed as endangered on March 17, 1993. The designation of critical habitat was postponed for one year pursuant to 16 U.S.C. § 1533(b)(6)(C). Under this statute, the Service was obligated to designate the critical habitat for these species no later than March 17, 1994.

Plaintiff notified the Service of its intent to file suit on June 29, 2000; the complaint was filed on October 12, 2000. The following questions thus arise: Is plaintiff's suit regarding these nine species time-barred by the six-year statute of limitations of 28 U.S.C. § 2401(a)? If the suit is not barred, clearly the plaintiff is entitled to summary relief against the Service, but

10. Doc. 18.

11. Doc. 11.

what amount of time should the Service be allowed in which to designate critical habitats?

Plaintiff concedes that, all other questions aside, it is the statute of limitations of 28 U.S.C. § 2401(a) which controls. First, it must be determined when the statute of limitations began running, if indeed it has begun running at all.

Plaintiff insists that the statute has never commenced to run because there was no "final agency action." Plaintiff in effect argues that the Service's failure to designate a critical habitat is a "non-action," and the statute could never begin to run. In other words, plaintiff says that a failure to carry out a statutory mandate is a *continuing* non-feasance in the sense of a continuing tort or continuing nuisance. The argument is persuasive. If the Service's failure to designate critical habitat is time-barred, then *no one* may compel the Service to do so. An anomaly would be presented: Although the Service has determined that the designation of critical habitats is prudent, it has not designated those habitats within the time allowed, and no one may compel the Service to do so.

The Endangered Species Act requires the Service to designate critical habitats for endangered or threatened species for which such a designation is deemed prudent. The Service insists that there was a "discreet event"—*viz.*, the day after the expiration of the one-year period—at which the statute of limitations began running, and that

It would not be proper to construe that discreet event as a continuing violation

that would hold the statute of limitations in abeyance for time in memorial and leave the federal government forever vulnerable to stale claims, despite no indication from Congress that it wished this to be the case.[12]

Respectfully, the non-repeal of 16 U.S.C. § 1533(b)(6)(C), which unequivocally directs the Service to designate critical habitat within one year of listing a species as endangered, must be presumed to be an indication of Congress's wishes.[13] There is no exception to that statutory directive that now applies to the nine species at issue. The Service's *non-action* logically can only be construed as a continuing violation of 16 U.S.C. § 1533(b)(6)(C). The statute of limitations commences to run anew each and every day that the Service does not fulfill the affirmative duty required of it. In short, the statute of limitations has never commenced to run. Regarding the nine species for which a critical habitat was found to be not determinable, the defendants' Motion for Summary Judgment[14] shall be DENIED and plaintiff's Motion for Summary Judgment[15] shall be GRANTED IN PART.

■ The question of the time limits to be imposed on the Service must now be addressed. With regard to the species within the not prudent category, the Fish and Wildlife Service acknowledges that relatively recent decisions from other circuits require at the very least a finding by this Court that the Service did not consider all criteria in reaching its "not prudent" determination, and it asks that it be al-

---

**12.** Supplemental letter brief, Doc. 29, p. 2.

**13.** In all fairness, it also could be argued that the failure of Congress to provide sufficient funding to the Service is a manifestation of an intent that the Endangered Species Act should be allowed to languish.

**14.** Doc. 12.

**15.** Doc. 11.

lowed to reconsider the issues without judicial intervention. Plaintiff, on the other hand, maintains that this Court should conclude, on the basis of the existing administrative record, that the Service should be ordered to proceed directly to the habitat-designation phase; in other words, that this Court should find that a designation of a critical habitat was "prudent" for each of the subject seven species. There is one *hypothetical* factor that makes such a ruling tempting—the Service theoretically could postpone inordinately the designation of a critical habitat for an endangered species merely by finding such a designation to be not prudent and, when challenged thereon, by asserting that it should be allowed the opportunity to consider criteria which it did not previously. On the other hand, this or any other court should allow governmental agencies the opportunity to faithfully discharge their duties until such time as it is revealed that they have no intention of doing so. This Court, after all, has no biological expertise and, if at all possible, it should allow those with such expertise the opportunity to use it. More importantly, in light of the budgetary limitations confronting the Service, the Service now is in the position of sacrificing one interest for the sake of another. Thus, the Court is confronted with these competing considerations. The Court declines to order the Service to proceed directly to the habitat-designation stage with respect to these seven species; the Service shall be allowed a period of time in which to consider the issue of prudency with respect to these species and, regarding those for which a habitat designation is deemed prudent, some time thereafter in which to designate a habitat. The Court adopts the Service's proposed schedule. The Service must submit a new prudency determination and possible proposed rule to the Federal Register for the Cumberlandian elktoe no later than May 19, 2003;

for the Braun's rockcress, no later than May 26, 2003; for the Cumberlandian combshell, oyster mussel, purple bean and rough rabbitsfoot, no later than June 16, 2003; and for the Eggert's sunflower, no later than December 29, 2003. For any species for which designation of a critical habitat is found to be prudent, the designation of such habitat will be made not less than twelve months after the determination of "prudent." The Court frankly states that it feels that it has been forced to be an unwilling accessory to a violation of law, but the circumstances leave no real alternative.

As to those species within the not determinable category, the Court again adopts the proposed schedule of the Service: for the Upland combshell, southern acornshell, coosa moccasinshell, southern clubshell, southern pigtoe, ovate clubshell, triangular kidneyshell, fine-lined pocketbook, and Alabama moccasinshell, the Service shall make a proposed final critical habitat designation no later than March 17, 2003, with the final designation to follow in twelve months.